**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TIFFANY C.,**

                        **Plaintiff,**

                v.                                **5:17-CV-878**
                                                      **(FJS/DJS)**

**NANCY A. BERRYHILL, Acting Commissioner**
**of Social Security,**

                        **Defendant.**
_____

**APPEARANCES**                                               **OF COUNSEL**

**OLINSKY LAW GROUP**                        **HOWARD D. OLINSKY, ESQ.**
300 South State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **ANDREEA L. LECHLEITNER, ESQ.**
**Office of Regional General Counsel**
**Region II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff applied for child's disability insurance benefits on November 7, 2013, and for Supplemental Security Income the same date, alleging disability beginning June 30, 2008. *See* Administrative Record ("AR") at 43, 46.[1] Defendant initially denied these claims on February 24,

---

[1] References to page numbers in the Administrative Record are to the page numbers that
(continued...)

2014, *see id.* at 140-151, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff initially appeared for a hearing before ALJ Hamel on August 11, 2015, at which time her parents accompanied her; however, she had no legal representative. At Plaintiff's request, the ALJ postponed the hearing so that Plaintiff could obtain legal counsel. *See id.* at 96-113. On December 7, 2015, the ALJ issued a written decision, in which he found that Plaintiff was not disabled under the Social Security Act. *See id.* at 43-59. On June 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Defendant Commissioner's final decision. *See id.* at 1-5.

On August 9, 2017, Plaintiff commenced this action, seeking review of Defendant's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed her brief in support of her motion for judgment on the pleadings on December 21, 2017, *see* Dkt. No. 9; and Defendant filed her brief in support of her motion for judgment on the pleadings on December 28, 2018, *see* Dkt. No. 10.

On June 20, 2018, Magistrate Judge Stewart issued his Report-Recommendation and Order, in which he recommended that this Court deny Plaintiff's motion, grant Defendant's motion, affirm Defendant's decision, and dismiss Plaintiff's complaint. *See generally* Dkt. No. 11. On July 5, 2018, Plaintiff filed objections to Magistrate Judge Stewart's recommendations. *See* Dkt. No. 12.

---

[1](...continued)
appear at the bottom right of those pages. References to page numbers in all other documents in the record are to the page numbers that appear at the top right of those pages, which the Court's Electronic Case Filing system generates.

## II. DISCUSSION

**A.     The ALJ's Decision**

In his decision, after careful consideration of the entire record, the ALJ made the following "Findings of Fact and Conclusions of Law":

> (1) Plaintiff "had not attained age 22 as of June 30, 2008, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5))."
>
> (2) Plaintiff had "not engaged in substantial gainful activity since June 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)."
>
> (3) Plaintiff had "the following severe impairments: anxiety disorder, panic disorder, dysthymia, and learning disability (20 CFR 404.1520(c) and 416.920(c))."
>
> (4) Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."
>
> (5) Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can do routine and repetitive tasks only. [Plaintiff] is unable to do tasks requiring more than occasional public contact either in person or over the phone and is unable to do tasks that require more than occasional interactions with co-workers. She is also unable to perform tasks with a strong production pace element."
>
> (6) Plaintiff had "no past relevant work (20 CFR 404.1565 and 416.965)."
>
> (7) Plaintiff "was a younger individual on the alleged disability onset date (20 CFR 404.1563 and 416.963)."
>
> (8) Plaintiff had "at least a high school education and [was] able to communicate in English (20 CFR 404.1564 and 416.964) (Ex. 4E/1, 3)."

>(9) "Transferability of job skills [was] not an issue because [Plaintiff did] not have past relevant work (20 CFR 404.1568 and 416.968)."
>
>(10) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))."
>
>(11) Plaintiff had "not been under a disability, as defined in the Social Security Act, from June 30, 2008, through the date of this decision [December 7, 2015] (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g))."

*See* AR at 46-59.

### B.     Magistrate Judge Stewart's recommendations

In her motion for judgment on the pleadings, Plaintiff raised four issues: (1) the ALJ erred at step three of his analysis in finding that she did not meet Paragraph C of the Listing 12.06 criteria; (2) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence because it failed to account for Plaintiff's need for special supervision or additional explanation of instructions; (3) the ALJ's step five finding was not supported by substantial evidence because it was based on an incomplete hypothetical to the vocation expert ("VE"); and (4) the Appeals Council erred when it failed to consider new and material evidence that Plaintiff submitted to it for review. *See generally* Dkt. No. 9.

After thoroughly reviewing the record, Magistrate Judge Stewart concluded that there was substantial evidence in the record to support each of the ALJ's conclusions to which Plaintiff objected. Furthermore, with regard to Plaintiff's argument that the Appeals Council had erred by failing to consider new and material evidence that she had submitted for its review, Magistrate Judge Stewart noted that it was "difficult to see how the material [that Plaintiff] submitted for the

first time to the Appeals Council could be considered new and material, *i.e.* likely to have led to a different result, when by Plaintiff's own argument it merely serve[d] to show a lack of improvement." *See* Dkt. No. 11 at 15. Specifically, Magistrate Judge Stewart concluded that the letter from Ashley Lawton, a counselor, which was not accompanied by any treatment notes or records "offer[ed] no basis for finding [that] the ALJ would have reached a different determination had this information been available to him." *See id.* at 16 (citation omitted). Finally, with regard to Nurse Practitioner Amy Casale's treatment therapy notes, Magistrate Judge Stewart concluded that her records "demonstrate[d] little that could be considered new information . . . [and, in fact,] this information [was] consistent with the information the ALJ relied upon in reaching his conclusion." *See id.* Thus, Magistrate Judge Stewart found that, "[b]eyond suggesting that the records show 'that Plaintiff is not getter [sic] better' Plaintiff . . . fail[ed] to articulate what [was] new, rather than merely cumulative, in these records." *See id.* at 16-17 (citation omitted).

**C.     Plaintiff's objections to Magistrate Judge Stewart's recommendations**

   *1. Standard of review*

Plaintiff objects to two of Magistrate Judge Stewart's findings: (1) that there is substantial evidence in the record to support the ALJ's RFC determination and (2) that there is substantial evidence in the record to support the ALJ's Step 5 finding. *See generally* Dkt. No. 12.

When a court reviews a magistrate judge's recommendations, its review is *de novo* as to those recommendations to which a party objects, *see Pizzaro v. Bartlett*, 766 F. Supp. 815, 817 (S.D.N.Y. 1991), and for clear error or manifest injustice as to those recommendations to which a party does not object or makes only conclusory or general objections, *see Linares v. Mahunik*, No.

9:05-CV-625, 2009 WL 3165660, *10 (N.D.N.Y. July 16, 2009) (citation and footnote omitted); *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After conducting its review, "the Court may 'accept, reject, or modify, in whole or in part, the . . . recommendations made by the magistrate judge.'" *Linares*, 2009 WL 3165660, at *10 (quoting 28 U.S.C. § 636(b)(1)(C)).

### *2. The ALJ's RFC determination*

As noted, the ALJ found that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels" with some non-exertional limitations, including that Plaintiff could "do routine and repetitive tasks only," was "unable to do tasks requiring more than occasional public contact either in person or over the phone," was "unable to do tasks that require[d] more than occasional interactions with co-workers," and was "unable to perform tasks with a strong production pace element." *See* Dkt. No. 8 at 50. To support his determination, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." *See id.*

The ALJ also noted that, at the hearing, Plaintiff had testified that she experienced panic attacks every day; was sensitive to any criticism; needed help remembering and following instructions at work; was told that she did not work fast enough, which upset her; was afraid to drive; did not socialize much although her parents talked to her; and needed special attention at school because of her learning disability. *See id.* at 51. Plaintiff also testified that, during the day, she "did chores around the house like cleaning the dishes, vacuuming, doing the laundry, and helping cook meals." *See id.*

The ALJ concluded that, "[a]fter careful consideration of the evidence, [he found] that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible . . . ." *See id.*

Noting that Plaintiff claimed that the ALJ's RFC determination did not account for her need to have special supervision, Magistrate Judge Stewart found that, although the ALJ's RFC determination "did not specifically require particular supervision, the ALJ did place limits on Plaintiff's functional capacity that properly reflected her needs[, for example,] the RFC limited Plaintiff to routine and repetitive tasks only . . . [and] [t]he ALJ further limited Plaintiff's RFC by restricting her from performing tasks with a strong production pace element." *See* Dkt. No. 11 at 11 (citations omitted).

Magistrate Judge Stewart also noted that, to support his findings, the ALJ relied on Dr. Inman-Dundon's assessment that Plaintiff could perform unskilled work and his notation that there was a moderate limitation in Plaintiff's ability to remember detailed instructions and attend for extended periods. *See id.* (citing [AR} at 121; 120). Likewise, Dr. Caldwell, who also assessed Plaintiff, "found similar, though more mild, limitations." *See id.* at 11-12 (citing [AR] at 362-65). Magistrate Judge Stewart explained that "[t]he ALJ [had] considered these reports in the context of the other record evidence and accorded each of these findings partial weight, concluding that Plaintiff [had] moderate difficulties maintaining concentration." *See id.* (citing [AR] at 54). Magistrate Judge Stewart also noted that the ALJ had addressed that finding "by limiting Plaintiff to routine and repetitive tasks where the need for instruction and supervision [was] presumably at a minimum." *See id.* at 12. For these reasons, Magistrate Judge Stewart determined that the ALJ's

"conclusion drew an appropriate balance between Plaintiff's functional limitations and the concern identified by multiple sources that Plaintiff would have difficulty working routinely with others and would have a heightened level of anxiety when regularly in contact with supervisors and offered criticism of her work." *See id.* (citing [AR] at 53-54 & 374).

Magistrate Judge Stewart also explained that "[t]he ALJ's decision not to include a requirement regarding special supervision . . . dr[ew] support from the fact that none of the medical or other source evidence in the record, apart from Dr. Mohabir, articulated a specific need for Plaintiff to have special supervision." *See id.* at 12. The ALJ afforded little weight to Dr. Mohabir's opinion because she had started treating Plaintiff only one month before she provided this opinion and her opinion was "not well supported by the overall record and was inconsistent with Plaintiff's own description of her daily activities." *See* Dkt. No. 8 at 56. The ALJ also noted that, although Plaintiff "had test anxiety, problems completing timed tasks, difficulties processing auditory information and handling criticism, she was able to solve math problems, use visual aides and a computer, cook, bake, count change, graduate with a Regents high school diploma, be cooperative and maintain familial relationship." *See id.*

For all of these reasons, Magistrate Judge Stewart concluded that there was substantial evidence in the record to support the ALJ's RFC determination. *See* Dkt. No. 11 at 13.

In her objections, Plaintiff argues that the Court should reject Magistrate Judge Stewart's findings with regard to this issue and remand the case to the ALJ so that he can properly consider Plaintiff's need for special supervision. *See* Dkt. No. 12 at 1.

Plaintiff acknowledges that, in finding that she was capable of performing the job of dishwasher, the ALJ did limit her "to routine and repetitive tasks without a strong production pace

element, and no more than occasional contact with the public or coworkers." *See id.* at 2 (citing [AR at] 58, 50). Plaintiff also acknowledges that Dr. Inman-Dundon opined that she would be able to maintain unskilled work. *See id.* However, she argues that these limitations came with other limitations that the ALJ did not account for in his RFC determination, including "moderate limitations accepting instructions and responding appropriately to criticism from supervisors and setting goals or making plans independently of others." *See id.* (citing [AR at] 118-21).

Furthermore, Plaintiff contends that the ALJ left out limitations that were demonstrated in the record and that the ALJ committed legal error by creating an RFC assessment that conflicted with a portion of a medical source statement to which he accorded weight without explaining the inconsistency. *See id.* (citing *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006)). Although she acknowledges that "the ALJ is not obligated to reconcile every shred of medical testimony, [she argues that] he cannot selectively choose to merit certain portions of opinion evidence that supports his conclusions without explaining why he chose to disregard the portions that were beneficial to Plaintiff's applications to benefits." *See id.* (citing *Gecevic v. Sec'y of HHS*, 882 F. Supp. 278, 285-86 (E.D.N.Y. 1995)). Plaintiff asserts that she "'is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits.'" *See id.* at 2-3 (quoting *Dioguardi*, 445 F. Supp. 2d at 297). Finally, Plaintiff contends that, "[w]hen the ALJ fails to explain the inconsistency of a favorably weighed opinion with his RFC determination, remand is required." *See id.* at 3 (citing *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234-35 (N.D.N.Y. 2012)). In other words, "[a]n ALJ is not allowed to 'cherry pick' evidence from the record that supports [his] conclusions." *See id.* (citations omitted).

Despite Plaintiff's arguments to the contrary, a review of the record demonstrates that the

-9-

ALJ did not "cherry pick" evidence from the record to support his RFC determination nor did he disregard portions of the record that supported Plaintiff's application for benefits. To the contrary, it is clear from the record that the ALJ considered all of the evidence, gave the appropriate weight to the medical and other source opinions, and reasonably determined Plaintiff's RFC based on the totality of the evidence. Furthermore, the portion of the record to which Plaintiff points to support her argument, *see* AR at 118-21, does not indicate that the ALJ ignored evidence that would support her application for benefits. The fact that Plaintiff may have moderate limitations in accepting instructions, responding appropriately to criticism from supervisors and setting goals or making plans independently of others are not limitations that would adversely affect her ability to work as a dishwasher and there is nothing in the record to indicate otherwise.

Therefore, after reviewing the record *de novo*, the Court finds that, for all the reasons stated herein as well as in Magistrate Judge Stewart's Report-Recommendation and Order, there is sufficient evidence in the record to support the ALJ's RFC determination.

### *3. The ALJ's Step 5 determination*

Plaintiff argues that there was not substantial evidence in the record to support the ALJ's Step 5 determination because the hypothetical question he posed to the VE did not include any questions regarding special supervision or instruction. For this argument to have merit, Plaintiff must prevail on her argument that the ALJ's RFC determination was in error.

Since the Court has determined, after its *de novo* review of the record, that there was substantial evidence in the record to support the ALJ's RFC determination, his reliance on that RFC determination as the basis for his questions to the VE was not error. *See* Dkt. No. 11 at 14 (citing

*Salmini v. Commissioner of Soc. Sec.*, 371 Fed. Appx. 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment")).

### III. CONCLUSION

The Court has reviewed the record *de novo* with regard to Magistrate Judge Stewart's recommendations to which Plaintiff objected and has reviewed Magistrate Judge Stewart's recommendations to which Plaintiff did not object for clear error and manifest injustice, and having completed its review, the Court hereby

**ORDERS** that Magistrate Judge Stewart's June 20, 2018 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated herein and in Magistrate Judge Stewart's Report-Recommendation and Order; and the Court further

**ORDERS** that Defendant's final decision is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 9, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 10, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: July 9, 2018
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Judge